UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

THERACARE OF NEW YORK, INC., and THERACARE MANAGED SERVICES, LLC,

        Plaintiffs,

-against-

11-20 46TH ROAD OWNER LLC,

        Defendant.

**MEMORANDUM AND ORDER**

Case No. 22-cv-880 (FB) (RLM)

---

*Appearances*:
*For Plaintiffs*:
RICHARD H. DOLAN
JOSHUA WURTZEL
CHRISTOPHER R. DYESS
Schlam Stone & Dolan LLP
26 Broadway
New York, NY 10004

*For Defendant*:
SHIREEN BARDAY
PAUL J. KREMER
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166

**BLOCK, Senior District Judge:**

    Plaintiffs Theracare of New York, Inc. ("Upper-Floor Tenant") and Theracare Managed Services, LLC ("Ground-Floor Tenant") (collectively, "Tenants") are commercial tenants who brought this action against their landlord, Defendant 11-20 46th Road Owner LLC ("Landlord"). Before the Court is Landlord's motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, Defendant's motion is granted in part and denied in part.

1

I.

The following facts are taken from Tenants' Amended Complaint, papers attached thereto, and documents incorporated by reference, including the leases at issue.[1] Tenants are two related organizations that entered into separate, identical leases with Landlord on November 1, 2018, for the use of 11-20 46th Road in Long Island City, Queens as a school for "young children on the autism spectrum." Am. Compl. ¶¶ 24. At this time, the premises were vacant and required significant work in order to be used as a school. The leases provided that Landlord would complete much of this work, including changes needed to receive a temporary certificate of occupancy ("TCO") from the New York City Department of Buildings. The leases conditioned the start of the tenancy and rent payments on the completion of this work. December 1, 2018 was targeted for the commencement of the tenancy, and March 15, 2019 was targeted for the issuance of a TCO.

The leases conditioned their commencement date and the start of Tenants' rent obligations on various measures of progress with Landlord's work. The "Rent Commencement Date," the date on which Tenants would begin owing rent, was to occur one year after the "Commencement Date," which was defined as "the date

---

[1] "In ruling on a 12(b)(6) motion . . . a court may consider the complaint as well as any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference." *Kalyanaram v. Am. Ass'n of Univ. Professors at New York Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014) (internal quotation omitted).

upon which substantial completion of Landlord's Work occurs." Am. Compl. Ex. A § 1.03(a)-(b), Ex. B § 1.03(a)-(b). Landlord's Work would be deemed to be substantially completed, and the commencement date would occur

> on the date upon which Landlord's Work has been completed, other than (i) minor details or adjustments, (ii) items which, in accordance with good construction practice, should be performed after completion of Tenant's Initial Alterations, (iii) elements of the work not required to be completed to obtain a temporary certificate of occupancy, and (iv) any part of Landlord's Work that is not completed due to Tenant Delay.

Am. Compl. Ex. A § 4.01(a), Ex. B § 4.01(a). The leases provided for rent abatement in the amount of "(1) day for each day the Changed Use Outside Date is delayed," to be reduced by any back rent Tenants had defaulted on. Am. Compl. Ex. A § 4.01(b)(iii), Ex. B § 4.01(b)(iii). The Changed Use Outside Date was to occur when the TCO was issued. A TCO was issued on February 28, 2020, 351 days after the target date, and Tenants began using the premises as a school in September 2021. Tenants concede that they have paid no rent under the leases.

The leases also require Landlord to reimburse Tenants for up to $1,562,625 spent on improvements to the premises not categorized as Landlord's Work, provided that Tenants submit requisitions with documentation to Landlord. Tenants submitted their first requisition to landlord on March 8, 2019 for $148,312.90, which included invoices for the relevant work, and which Landlord paid on March 20, 2019. A second requisition was submitted on February 27, 2020, this time for $224,798.80, to which Landlord responded by requesting that

3

Tenants reissue the requisition on letterhead, reconfigure an attached spreadsheet, and reduce the request based on limitations in the leases. Tenants resubmitted the requisition with these requested changes. On March 13, 2020, Landlord explained that the funds would be reimbursed when their lender had processed them, but never sent Tenants the funds. Tenants submitted a third requisition on October 5, 2021, for $1,250,100, which Landlord neither responded to nor paid. This requisition was sent after Landlord had made a demand for rent.

Tenants spent $54,137.31 on a consultant to assist with an environmental remediation required by the New York State Department of Environmental Protection, which they requested reimbursement for from Landlord but did not receive. Tenants allege they entered into a separate agreement with Landlord for the reimbursement of such fees in December 2019, which Landlord denies.

Finally, the leases gave Landlord broad discretion to deny Tenants the ability to advertise or enter into subleases. Entering into subleases required prior consent granted at "Landlord's sole discretion," while marketing or advertising subleases required permission given at "Landlord's reasonable discretion." Am. Compl. Ex. A §§ 5.01, 5.02, Ex. B §§ 5.01, 5.02. Upper-Floor Tenants requested permission to advertise a sublease on March 16, 2022. Landlord withheld its consent and promised to reject any proposed sublease on the basis that Upper-Floor Tenant was in default and Tenants had filed the instant lawsuit.

4

## II.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*, 550 U.S. at 555.

### A. Tenants' Claim for a Declaratory Judgment Concerning the Leases' Commencement Date

Tenants seek a declaratory judgment that the Commencement Date under the leases has not yet occurred and will not occur until the completion of Landlord's Work. Landlord argues that this claim is implausible on its face because it misconstrues the contractual language it relies on, specifically what constitutes "substantial completion" of Landlord's Work under sections 1.03(a) and 4.01(a) of the leases. Landlord argues that the Commencement Date occurred no later than

February 28, 2020, the day the TCO was issued, because all remaining work after the issuance of a TCO necessarily falls within exception (iii) of section 4.01(a):

> Landlord's Work shall be deemed to have been substantially completed on the date upon which Landlord's Work has been completed, other than (i) minor details or adjustments, (ii) items which, in accordance with good construction practice, should be performed after completion of Tenant's Initial Alterations, **(iii) elements of the work not required to be completed to obtain a temporary certificate of occupancy**, and (iv) any part of Landlord's Work that is not completed due to Tenant Delay.

Am. Compl. Ex. A § 4.01(a), Ex. B § 4.01(a) (emphasis added).

Tenants insist that this interpretation, under which substantial completion automatically occurs when a TCO is issued, renders the rest of section 4.01(a) redundant, and that a TCO is a necessary but not sufficient condition for the Commencement Date to occur—that "the date upon which Landlord's Work has been completed" refers to the total completion of Landlord's Work, save for the latter listed exceptions, which must still be *substantially* completed. In other words, Tenants assert that there exist portions of Landlord's Work other than work that was not needed to obtain a TCO, and that this work must still be substantially completed even after a TCO is issued in order for the commencement date to occur. But this reading imports a dichotomy between substantial and total completion other than what is supplied by the text of section 4.01(a)—nowhere is it explained to what degree the work described in the exceptions must be performed, only that said work is not included in what must be totally finished for

6

the commencement date to occur. Because a TCO has issued, it is impossible for the Commencement Date to not have occurred, or to have occurred later than February 28, 2020. Tenants' claim is therefore implausible on its face and must be dismissed.

**B. Tenants' Claim for a Declaratory Judgment Concerning Rent Abatement**

Tenants' second cause of action seeks a declaratory judgment that Tenants do not owe rent for the 351 days after the Rent Commencement Date. Their claim is based on language in the Leases providing a rent abatement for each day the Changed Use Outside Date, equivalent to the date the TCO issued, was delayed beyond March 15, 2019. The Changed Use Outside Date did not occur until February 28, 2020, the day the TCO was issued, which was 351 days after the target date of March 15, 2019. However, these 351 days of delay took place before the Rent Commencement Date, during which no rent was owed. The Leases provide that "Tenant shall receive an abatement of Fixed Rent **becoming due** . . . in an amount equal to one (1) day for each day the Changed Use Outside Date is delayed." Am. Compl. Ex. A § 4.01(b)(ii)-(iii), Ex. B § 4.01(b)(ii)-(iii) (emphasis added). Landlord asserts that this language predicates any abatement on "[r]ent becoming due," and argues that because rent did not come due during the delay, no relief in the form of abatement was triggered. Landlord also argues that the term "abatement" constrains any relief to forgiveness of rent coming due

7

contemporaneously, instead of functioning as a credit that can be applied to rent becoming due at a later date.

"[T]he ordinary meaning of 'abatement,' . . . refers to '[t]he act of eliminating or nullifying . . .'" and not "an 'offset, recoupment, withholding or deduction.'" *In re Great Atl. & Pac. Tea Co., Inc.*, 595 F. App'x 72, 75 (2d Cir. 2015) (quoting Black's Law Dictionary 3 (9th ed. 2009)). Tenants fail to provide an example of the term "abatement" being interpreted as a credit that can be applied at a later time. It would be inappropriate to stretch the ordinary meaning of "abatement" in order to import this meaning, especially given the sophistication of the parties. *See Global Reins. Corp. of Am. v Century Indem. Co.*, 442 F. Supp. 3d 576, 586 (S.D.N.Y. 2020) ("A contract must not be interpreted 'as impliedly stating something which the parties have neglected to specifically include,' particularly when sophisticated, counseled parties negotiated the agreement at arm's length.") (quoting *Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*, 30 N.Y.3d 508, 518-19 (2017)). Based on the ordinary meaning of its provisions, section 4.01(b) cannot plausibly entitle Tenants to relief in the form of a credit, and the second count must therefore be dismissed.

## C. Tenants' Account Stated Claim

"Under New York law, an account stated refers to a promise by a debtor to pay a stated sum of money which the parties had agreed upon as the amount due." *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 197 (S.D.N.Y. 2009) (internal quotation omitted). For allegations in a complaint to support an account stated claim, "the plaintiff must allege that (1) an account was presented, (2) the account was accepted as correct, and (3) the debtor promised to pay the amount stated." *Id.* at 198. "Such an agreement may be implied if 'a party receiving a statement of account keeps it without objecting to it within a reasonable time.'" *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 64 (2d Cir. 1999) (internal quotation omitted) quoting *Chisholm–Ryder Co. v. Sommer & Sommer,* 70 A.D.2d 429, 431 (N.Y. App. Div. 1979)).

Tenants allege that Landlord's failure to make specific objections to their second and third requisitions established an account stated. Landlord argues that the parties' communications cited in and attached to the Amended Complaint do not indicate an agreement on a correct sum for the second requisition, sent in March 2020, and that Landlord's failure to respond to the October 2021 requisition did not constitute an agreement to pay because the same communications showed that parties were preparing for litigation. Landlord also points to Tenants' failure to submit required documentation with the requisitions as required by the leases.

9

After receiving the updated second requisition, Landlord held onto both of the latter two requisitions without objection, only commenting that its payment was being held up by its creditor. This could plausibly have indicated an agreement to pay. *See Perine Int'l Inc. v. Bedford Clothiers, Inc.*, 143 A.D.3d 491, 493, 40 N.Y.S.3d 27 (2016) (granting summary judgment for account stated claimant where debtor "received and retained the invoice without objection") (internal quotation omitted). Furthermore, Tenants' failure to comply with the leases' documentation requirements does not render their claim implausible as a matter of law, as Landlord's retention without objection to their requisitions may ultimately be determined to have waived objection to any defects. *See Cohen Tauber Spievak & Wagner, LLP v. Alnwick*, 33 A.D.3d 562, 563-64 (explaining that a debtor "holding the statement without objection will be construed as acquiescence as to its correctness."). Nor has Landlord shown that Tenants' requisitions were sent in a such an irregular pattern that Landlord's actions could not plausibly be considered acceptance. *See Roth L. Firm, PLLC v. Sands*, 82 A.D.3d 675, 676 (dismissing an account stated claim for irregular billing where plaintiff's invoices "were addressed to a variety of entities and individuals" at different addresses).

Finally, Landlord's argument that the parties' budding rent dispute precludes an account stated claim for the October 2021 requisition is not persuasive. In *Episcopal Health Servs., Inc. v. Pom Recoveries, Inc.*, 138 A.D.3d 917, 918

10

(2016), the Appellate Division granted a motion to dismiss a claim on this basis where a lawsuit between the parties had already been filed before the account was delivered. Landlord cites a communication attached to the complaint indicating the parties were engaged in a settlement discussion to argue that a dispute over rent had arisen at the time of the second requisition. In comparison with the preexisting lawsuit between the parties in *Episcopal Health Servs.*, this is insufficient on its own to establish the timing and extent of the parties' dispute over rent. Landlord's motion to dismiss count three of the Amended Complaint is therefore denied.

**D. Tenants' Breach of Contract Claim for Requisitions**

In the alternative to their account stated claim, Tenants allege breach of contract based on Landlord's failure to pay the latter two requisitions. Landlord argues that Tenants' failure to attach lien waivers to the requisitions and their default on rent make their material compliance with conditions precedent impossible as a matter of law. While the Amended Complaint's assertion that Tenants "materially complied" with the requisition requirements in their lease is conclusory and need not be credited, the factual question of material compliance is better suited for a later stage of litigation. Amend. Compl. at ¶ 102.

**E. Tenants' Breach of Contract Claim for Environmental Consulting Fees**

Tenants' fifth cause of action alleges breach of a separate contract, allegedly entered into in December 2019, to reimburse tenants for the cost of an

11

environmental consultant. Tenants ask that in the event its claim be found inadequate, they be granted leave for a pleading amendment.

Though Rule 8 only requires plaintiffs to include a "short and plain statement of the claim," Fed. R. Civ. P. 8(a), New York law requires "specific allegations as to the agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached as a result of the acts at issue" in order to provide defendants with notice, *Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155, 183 (S.D.N.Y. 2009) (internal quotation omitted). Establishing the existence of a contract is also an essential element of a breach claim under New York Law. *U.S. Bank Nat. Ass'n v. Dexia Real Est. Cap. Markets*, 959 F. Supp. 2d 443, 447 (S.D.N.Y. 2013).

Tenants plead no details regarding the formation or terms of an agreement outside of "conclusory statements" that a contract was entered into in December of 2019 with sufficient consideration, which are ignored in evaluating a motion to dismiss. *Ashcroft*, 556 U.S. at 678. They have pleaded no facts that would "permit a trier of fact to conclude . . . that the parties entered into a legally binding agreement." *Advanced Marine Techs., Inc. v. Burnham Sec., Inc.*, 16 F. Supp. 2d 375, 381 (S.D.N.Y. 1998); *see Abu Dhabi Com. Bank*, 651 F. Supp. 2d at 184 (dismissing breach action where "plaintiffs fail[ed] to provide any facts about how this contract was formed, the date of formation, the consideration, or the contract's

12

major terms"). Tenants' breach claim is therefore dismissed, though the Court grants leave for Tenants to serve and file an amendment with respect to the count within 20 days of the date of this Order.

**E. Upper-Floor Tenant's Claims Regarding Sublease Advertisements**

The Upper-Floor Tenant alleges that Landlord breached section 5.02(f) of its lease by refusing to allow it to advertise a sublease. It also claims that this denial of permission to advertise and Landlord's ex ante refusal of any proposed subleases breached the implied covenant of good faith and fair dealing.

Upper-Floor Tenant's good faith claim must be dismissed insofar as it is based on Landlord's refusal to allow it to market a sublease, as this is the same conduct covered by its breach of contract allegation. *See In re Houbigant Inc.*, 914 F. Supp. 964, 989 (S.D.N.Y. 1995) (explaining that an implied covenant claim "will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for a claim for breach of covenant of an express provision of the underlying contract"); *Echostar DBS Corp. v. Gemstar-TV Guide Int'l, Inc.*, No. 05 CIV. 8510, 2007 WL 438088, at *8 (S.D.N.Y. Feb. 8, 2007) (dismissing implied covenant claim where underlying allegations "merely duplicate some of Plaintiffs' other breach of contract claims").

The implied covenant claim based on Landlord's rejection of any proposed subleases must also be dismissed. Under the Upper-Floor Lease, Landlord retained

13

"sole discretion" to consent or refuse to consent to allowing a sublease. Am. Compl. Ex. A §§ 5.01-5.02. Upper-Floor Tenant argues that Landlord violated the implied covenant because its blanket rejection of all sublease proposals did not constitute an exercise of discretion. While "the covenant of good faith and fair dealing applies to cases where a contract contemplates the use of discretion," it is only invoked to restrict bargained-for discretion when failing to do so "would render the entire contract illusory," deny a party the "fruits of the contract," or allow a party to "exercise that discretion arbitrarily or irrationally." *S. Telecom Inc. v. ThreeSixty Brands Grp., LLC*, 520 F. Supp. 3d 497, 505-06 (S.D.N.Y. 2021). It is not invoked when doing so would create a conflict with contractual language "and is not necessary to make the agreement meaningful." *Id.* at 507.

Here, applying the implied covenant is not necessary to give the contract meaning or to save Upper-Floor Tenants from being denied the fruit of their lease. The situation here is dissimilar to *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384 (1995), on which Upper-Floor Tenant relies to argue Landlord refused to exercise its discretion. In *Dalton*, the plaintiff availed himself of a contractual opportunity to provide information to challenge the defendant's decision to cancel his standardized test score. The court found that the defendant failed to exercise its discretion because it refused to consider the information the plaintiff had provided, which it was contractually obligated to do. Here, Landlord was under no obligation

14

to consider the specifics of any particular proposed sublease. Nor was the sublease a critical portion of the lease, without which it would be rendered illusory. For these reasons, Upper-Floor Tenant's implied covenant claims are dismissed.

Finally, Upper-Floor Tenant's breach claim must be dismissed. Landlord's ability to restrict Tenants from advertising a sublease was subject to "reasonable discretion" under the lease, Am. Compl. Ex. A §§ 5.01-5.02, which binds Landlord to a promise "not to act arbitrarily, irrationally, or without reasonable basis," *Grandfeld II, LLC v. Kohl's Dep't Stores, Inc.*, 163 A.D.3d 782, 784 (2nd Dep't 2018). Landlord refused to allow advertisements because of Tenants' rent default and because it planned to reject any proposed sublease. Upper-Floor Tenant asserts that it was not in default, and that Landlord's refusal was unreasonable because its underlying refusal to entertain sublease proposals violated the implied covenant of good faith. Both of these issues have already been resolved against Upper-Floor Tenant—its claims for declaratory relief regarding the Rent Commencement Date and for breach of the implied covenant were both rejected, meaning that Upper-Floor Tenant likely did owe rent and that Landlord's decision regarding subleases was not arbitrary, irrational, or unreasonable. Its breach claim is therefore dismissed.

## III.

For the foregoing reasons, Landlord's motion to dismiss is GRANTED with

respect to the first, second, fifth, sixth, and seventh counts in the Amended Complaint, and DENIED with respect to the third and fourth. The former claims are DISMISSED with prejudice, save for the fifth count, for which the Court grants leave to serve and file an amendment within 20 days of the date of this Order. These claims are also DISMISSED insofar as they are incorporated as counterclaims lodged against Landlord in Tenants' Answer to Landlord's consolidated lawsuit against them, as is consented to by the parties. *See* Dkt. Nos. 29, 30; Case No. 22-cv-05239, Dkt. No. 19, at 9. Tenants' account stated claim and claim in the alternative for breach of contract, as set forth in counts three and four of the Amended Complaint and as counterclaims in their Answer to Landlord's suit, remain intact.

    **SO ORDERED.**

                                                                                                                                                           _/S/ Frederic Block_
                                                                                                                                                        FREDERIC BLOCK
                                                                                                                                                                Senior United States District Judge

Brooklyn, New York
January 19, 2023